**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LYLE VOGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 11 CV 7160 |
| v. | ) | |
| | ) | Magistrate Judge Michael T. Mason |
| LINDA BRYANT FRISBEE, | ) | |
| individually and as Trustee | ) | |
| of the LeRoy Voga Trust, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

Before the court is defendant Linda Bryant Frisbee's ("defendant" or "Linda") motion to dismiss for failure to join indispensable parties or alternatively for abstention ([8], re-filed at [30]). After fully briefing the motion, the parties consented to the jurisdiction of the undersigned Magistrate Judge for all future proceedings pursuant to 28 U.S.C. § 636(c) [19]. For the reasons set forth below, defendant's motion to dismiss is granted in part and denied in part.

**I.    BACKGROUND**

   **A.    Allegations of Plaintiff's Complaint**

On October 11, 2011, plaintiff Lyle Voga ("plaintiff" or "Lyle"), an Illinois resident, filed a one-count complaint against his sister Linda, an Arkansas resident, alleging breach of fiduciary duty. The allegations of that complaint are as follows.

On January 22, 2003, LeRoy Voga ("LeRoy"), a farmer and father to Lyle, Linda, Lois Englert ("Lois"), and Larry Voga ("Larry"), executed the LeRoy Voga Trust (the

"Trust") and named his children the beneficiaries. (Compl. ¶ 9.) Pursuant to the Trust, Linda was appointed sole trustee after LeRoy's death. (*Id.* ¶ 10.) Linda was also given power of attorney over LeRoy's affairs. (*Id.* ¶ 11.) The Trust consisted of farm land, machinery, bank accounts, stock, and other items of personal property. (*Id.* ¶ 12.) Under the terms of the Trust, Lyle, who helped his father for many years on the farm, was to receive one-half of the family farm property and the farm machinery. (*Id.* ¶ 14.) Linda and Larry were each to receive one-quarter of the farm property, and Lois was not to receive any of the farm property. (*Id.* ¶ 15.) Lyle alleges that when he received his copy of the Trust, "Schedule A," which was a list of assets, was not included in or attached to the Trust. (*Id.* ¶ 24.)

At some point prior to his death on September 26, 2006, LeRoy slipped into a coma and became incapacitated. (Compl. ¶ 16.) While LeRoy was in a coma, and "presumably the day before his death," Linda exercised her power of attorney and amended the Trust (the "Amendment"). (*Id.* ¶ 17.) The Amendment purported to provide Lois a share of the trust assets equivalent to the portions of farm land given to Linda and Larry, but did not specify which assets would make up Lois' share. (*Id.* ¶ 18-19.) In Lyle's opinion, the Amendment was "counter to the preservation of LeRoy Voga's Trust intent." (*Id.* ¶ 19.)

On February 6, 2007, about four months after LeRoy's death, Linda presented her siblings with a proposed agreement, titled "Agreement Between Co-Trustees" (the "Agreement"), which set forth how the Trust would be handled and which assets would make up Lois' share. (Compl. ¶ 20 & Ex. 1.) Among other things, the Agreement provided that Lois would receive "all cash liquid assets on hand at the time of LeRoy

2

Voga's death," as well as "the revenue from the sale of all crops grown in 2006 or held in storage from previous years, less the direct cost of harvest." (Compl. at Ex. 1.) According to Lyle, however, there was no provision in his father's initial Trust "regarding the grain in the field or in bins." (Compl. ¶ 23.) The Agreement also contemplated that the farm land must be sold to pay taxes and expenses and that Lyle, Larry, and Lois would be co-trustees of the Trust. (*Id.* ¶ 22.) In a separate document, also dated February 6, 2007, Lyle, Larry, and Lois were in fact designated co-trustees. (*See* Mot. to Dismiss at Ex. 1.) Additionally, the Agreement included a provision that if any of the co-trustees brought a legal action against Linda, LeRoy's attorney, or his accountant, they risked being disinherited under the no-contest clause in the Trust. (Compl. Ex. 1.)

In early 2010, Lyle "acquired knowledge that he should have received the grain existing on the family farms" at the time of his father's death. (Compl. ¶ 25.) The grain had a value of over $100,000. (*Id.* ¶ 26.) Lyle also learned that he should have received certain personal property of substantial value. (*Id.* ¶ 27.) According to Lyle, because he did not receive the grain or valuable personal properly, "and due to the expenditure of legal fees to defend the interests he has received under the Trust," he has been unable to pay the estate tax Linda claims is due from him. (*Id.* ¶ 28.) This has resulted in a substantial federal estate tax lien on his farm land. (*Id.* ¶ 29.) Linda, however, no longer sustains a tax lien on her property, despite having paid much less than her proportionate share of the Trust's estate taxes. (*Id.* ¶ 30.)

In this action, Lyle alleges that Linda, as a fiduciary, breached her duties of loyalty, honesty, candor, and good faith by self dealing, acting with bias in favor of Lois, and attempting to divest Lyle of assets he should have received under the Trust.

3

(Compl. ¶ 34.) As a direct result of such breaches, Lyle claims he has lost substantial property interests, "is being dunned for an estate tax payment which is inequitable and not proportionate to his interest," suffers a tax lien on his property larger than what his equitable proportion of the estate tax should be, and has been forced to pay a substantial amount in attorney's fees. (*Id.* ¶ 35.) Linda now moves to dismiss the complaint, in part due to ongoing state court proceedings in the Circuit Court of Kendall County, which we turn to now.

### B. Ongoing Kendall County Action

At some point in 2008, Centrue Bank filed an interpleader action (hereinafter, the "*Centrue* case") against the Voga children in the Circuit Court of Kendall County asking the court to determine who, if anyone, was entitled to $81,670 in cash found in LeRoy's safety deposit box at the bank. On August 26, 2010, Lyle filed a 13-count "Counter Complaint" against all of his siblings. (*See* Mot. at Ex. 3.) In his Counter Complaint, Lyle alleges, among other things, that Larry and Lois failed to properly account for certain trust assets, misappropriated trust funds for personal use, and failed to properly transfer certain parcels of land to Lyle and Linda as required by the Trust. Lyle also alleges that the power of attorney naming Linda as agent failed to meet the statutory requirements and was thus a common law power of attorney, which terminated upon the physical and mental incapacity of LeRoy. As a result, Lyle seeks a declaratory judgment that any action taken by Linda following her father's physical and mental demise, including the Amendment to the Trust, be declared null and void. Finally, Lyle alleges that a dispute remains regarding the proper method of computing an equitable allocation of the unpaid federal and state estate taxes. Specifically, Lyle claims that

4

there remains an issue regarding his section 2032A election on certain farm property.[1]

On November 19, 2010, Lyle added another claim against Linda. (Mot. at Ex. 4.) In that claim (incorrectly titled Count IIV, instead of Count IV), Lyle makes reference to the Amendment Linda made to the Trust just prior to her father's death. Lyle also refers to the February 6, 2007 Agreement regarding Lois' share and alleges that he did not receive a copy of "Schedule A" when he received his copy of the Trust. In Count IV, as above, Lyle contends that he eventually learned that he, not Lois, should have received the growing crops and grain in storage under the terms of the Trust. Because Linda attempted to transfer Lyle's interest in the crops and grain to Lois, Lyle contends that Linda breached her fiduciary duty in clear violation of the estate plan of their father. As a result, Lyle seeks a declaratory judgment that Linda violated the provisions of the Trust, thereby forfeiting her interest in any devises or bequests therefrom. Alternatively, Lyle asks that $300,000 from the sale of Linda's trust property be placed in escrow "until the issue of whether she has intentionally damaged Lyle has been adjudicated." Although Count IV has been voluntarily dismissed, and the interpleader portion of the *Centrue* case has been resolved (*see* Joint Status Report at Ex. B), a number of Lyle's claims against his siblings remain pending in the Circuit Court of Kendall County.

## II. ANALYSIS

---

[1] "The purpose of § 2032A was to encourage the continued operation of family farms and other small family businesses by permitting real property used for the farm or business to be valued upon its present use, rather than upon its highest and best use. Thus, § 2032A relieves taxpayers from having to sell an eligible family farm or business when the income from its present use is insufficient to pay the tax calculated upon its highest and best use." *Schuneman v. U.S.,* 783 F.2d 694, 697 (7th Cir. 1986).

Linda now seeks dismissal of Lyle's complaint for failure to join indispensable parties, namely Larry and Lois, under Federal Rules of Civil Procedure 12(b)(7) and 19. Alternatively, Linda asks the court to abstain from exercising its jurisdiction pursuant to Rule 12(b)(1) and the *Colorado River* doctrine. We address defendant's abstention argument first. *See Myers v. General Motors Corp.*, No. 11 C 8703, 2012 WL 3062013, at *3 n5 (N.D. Ill. July 25, 2012) (finding it appropriate to address abstention prior to joinder).

A motion to dismiss based on an abstention doctrine raises the question of whether a court should exercise subject matter jurisdiction and is thus properly considered under Rule 12(b)(1). *Miller Brewing Co. v. ACE U.S. Holdings, Inc.*, 391 F. Supp. 2d 735, 739 (E.D. Wis. 2005) (*citing Beres v. Village of Huntley*, 824 F. Supp. 763, 766 (N.D. Ill. 1992)). For purposes of a 12(b)(1) motion to dismiss, the court accepts as true all well-pleaded factual allegations in the plaintiff's complaint and draws all inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Additionally, the court can look beyond the pleadings to determine whether to abstain from exercising jurisdiction. *Beres*, 824 F. Supp. at 766.

The *Colorado River* doctrine, on which plaintiff relies here, stems from the case of *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). In that case, the Supreme Court created a narrow exception to the general rule that the pendency of a lawsuit in state court does not bar proceedings concerning the same matter in federal court. *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 645 (7th Cir. 2011). The doctrine permits "federal courts in some exceptional cases to defer to a concurrent state-court case as a matter of wise judicial administration, giving regard to

conservation of judicial resources and comprehensive disposition of litigation." *Id.* Nonetheless, as the Supreme Court and the Seventh Circuit have repeatedly admonished, federal courts have a virtually unflagging obligation to exercise the jurisdiction that Congress has given them. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716 (1996); *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 496 (7th Cir. 2011). As a result, there is a presumption against abstention. *Huon,* 657 F.3d at 646. Indeed, "the task of the district court is not to find some substantial reason for the exercise of federal jurisdiction but instead to ascertain whether there exist exceptional circumstances, the clearest of justifications...to justify the surrender of that jurisdiction." *Id.* (quotation omitted).

In deciding whether a stay or dismissal is appropriate under the *Colorado River* doctrine, the court must first evaluate whether the federal and state cases are "parallel." *Adkins,* 644 F.3d at 498. In doing so, "the court must ascertain whether 'substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" *Huon*, 657 F.3d at 646 (*quoting Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004)).

If the court determines that the cases are parallel, it must then assess whether exceptional circumstances justify abstention. In making this assessment, the court should carefully weigh the following non-exclusive factors:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious

or contrived nature of the federal claim.

*Huon*, 657 F.3d at 647-48. Because of the presumption against abstention, "absent or neutral factors weigh in favor of exercising jurisdiction." *Id.*

As explained above, we must first determine whether the *Centrue* case and this matter are parallel for purposes of the *Colorado River* doctrine. "Generally, two suits are parallel when they 'involve the same parties, arise out of the same facts and raise similar factual and legal issues.'" *Legal Helpers Debt Resolution, L.L.C. v. CDS Client Services, Inc.*, No. 12 C 3055, 2012 WL 4174996, at *2 (N.D. Ill. Sept. 17, 2012) (*quoting Tyrer v. City of S. Beloit*, 456 F.3d 744, 752 (7th Cir. 2006)). "The critical question is a practical one, focusing on whether the state case is likely to dispose of the claims presented in federal court." *Downey v. Keltz*, No. 11 C 1323, 2012 WL 280716, at *5 (N.D. Ill. Jan. 31, 2012) (quotation omitted).

Here, we conclude that a comparison of this case to the *Centrue* case satisfies the parallel standard. First, Linda and Lyle are parties in both cases. It is of no moment that Larry and Lois are parties in the *Centrue* case, or that there are more issues raised before the Kendall County court, as the "mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel."[2] *AAR Int'l., Inc. v. Nimelias Enters.*, 250 F.3d 510, 518 (7th Cir. 2001). Both cases also arise out of the same set of facts, *i.e.,* the LeRoy Voga Trust and the actions (or inactions) of the Voga children following their father's death, and the resolution of both cases will involve the review of substantially the same evidence. *See Tyrer*, 456 F.3d at 752-53.

---

[2] And, of course, defendant has taken the position that Larry and Lois should be parties to this action.

8

Further, the legal issues are similar because both cases involve the proper allocation of Trust property and estate tax liabilities. We recognize, of course, that Lyle did not specifically raise a claim for breach of fiduciary duty in the *Centrue* case as he has done here. However, in response to the motion to dismiss, Lyle himself acknowledges that the "principal dispute" in this case "revolves around federal estate taxes and a federal tax lien on [Lyle's] farmland, which arose because of [Linda's] unjust taking of a [section 2032A] tax credit which belongs to [Lyle]." (Resp. at 2.) The proper allocation of estate taxes is expressly raised in Count XIII of Lyle's counterclaim in the *Centrue* case, which remains pending. In fact, as set forth in the parties' most recent status report [24], there are ongoing "settlement-type discussions" regarding estate tax liability. Additionally, discovery regarding the estate taxes, and in particular the 2032A election, is ongoing in the *Centrue* case. (*See* Joint Status Report at Ex. A - Lyle's Responses to the First Request to Admit Facts of Linda Frisbee.)

As for Lyle's allegations in this matter that Linda breached her fiduciary duty by signing the Amendment and the Agreement, thereby siphoning Trust assets from Lyle to Lois, the Kendall County court also has before it similar issues. In Counts IX and X of his counterclaim, Lyle asked the Kendall County court to declare the Amendment and the Agreement null and void.[3] Lois and Larry have filed a motion to dismiss Count X, and a motion for summary judgment, claiming that "Lyle is barred from challenging the Amendment to the Trust under the Doctrine of Election, and has forfeited his interest in the Voga Trust under a no-contest clause." (Joint Status Report at 1.) Naturally, a

---

[3] Although the court previously entered judgment against Linda and in favor of Lyle on Counts IX and X, that order has since been vacated. (*See* Notice of Vacation of State Order [14].)

substantive ruling on these motions could have a preclusive effect on Lyle's claims here. All of this leads us to conclude that there is a substantial likelihood that the resolution of the *Centrue* case may dispose of Lyle's claims in this action.

Having determined that the *Centrue* case and this matter are parallel, we turn to the ten factors set forth above. In doing so, we keep in mind that "no single factor is determinative, and the weight given to any particular factor will vary depending on the circumstances of the case." *Corus Bank, N.A. v. de Guardiola*, 593 F. Supp. 2d 991, 994 (N.D. Ill. 2008).

***Whether the state has assumed jurisdiction over property***.

Neither party has offered anything more than conclusory assertions on this factor. As a result, it weighs against abstention.

***The inconvenience of the federal forum.***

Seeing as both sets of attorneys are located either in or just outside Chicago, we do not agree with defendant that this forum is inconvenient. We also note that with respect to Linda, who resides in Arkansas, this court might actually be easier to access than the Kendall County court. Thus, this factor weighs against abstention.

***The desirability of avoiding piecemeal litigation.***

This factor weighs heavily in favor of abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results ..." *Day v. Union Mines, Inc.*, 862 F.2d 652, 659 (7th Cir. 1998) (*quoting Am. Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1998)). As explained above, the issues that remain pending

in the *Centrue* case are so intertwined with those here that to allow both cases to move forward would be an inefficient use of judicial resources. Further, moving forward with both cases carries the possibility of inconsistent results on the issues of estate tax liability, the Amendment, and the Agreement.

***The order in which jurisdiction was obtained by the concurrent forums.***

Naturally, this factor weighs in favor of abstention as the *Centrue* case was initiated in 2008, with Lyle's counterclaims coming in August of 2010. This action was not initiated until late 2011.

***The source of governing law, state or federal.***

We recognize that a review of federal tax law would be necessary on the issue of whether Linda's alleged use of the section 2032A election constitutes a breach of fiduciary duty. However, the plaintiff has not asked this court to take any specific action regarding the 2032A tax lien that would bring into play possible remedies available under the tax code. Instead, the plaintiff's declaratory claims in the Kendall County case regarding tax allocation among beneficiaries and his breach of fiduciary duty action here are governed by Illinois law. *See Lurie v. C.I.R.,* 425 F.3d 1021, 1025 (7th Cir. 2005) (noting that state law controls how the estate tax burden is allocated among the assets of an estate). This factor weighs in favor of abstention.

***The adequacy of state-court action to protect the federal plaintiff's rights.***

Plaintiff has offered no persuasive reasons why his rights will not be adequately protected by the state court, nor do we find any. As a result, this factor weighs in favor of abstention.

***The relative progress of state and federal proceedings.***

Although Lyle argued in his response brief that the *Centrue* case was essentially dormant with respect to his counterclaims, the parties' most recent submission reveals otherwise. As stated above, the parties have briefed a motion to dismiss and motion for summary judgment on certain issues, discovery is and has been ongoing for quite some time, and the parties have discussed settlement on the issue of estate tax liability. As the proceedings in this case have barely just begun, this factor weighs in favor of abstention.

***The presence or absence of concurrent jurisdiction.***

Because this court and the Kendall County court have concurrent jurisdiction, this factor weighs in favor of abstention. *Clark,* 376 F.3d at 688 ("[T]he availability of concurrent jurisdiction weigh[s] in favor of a stay.").

***The availability of removal.***

This factor weighs in favor of abstention because the Kendall County case could not be removed given the lack of complete diversity among the parties to that action. *Clark*, 376 F.3d at 688 (noting that the inability to remove a state court action due to lack of diversity weighs in favor of a stay).

***The vexatious or contrived nature of the federal claim.***

Unlike defendant, who we understand has a litigious and checkered relationship with plaintiff, we do not find plaintiff's filing of this action particularly vexatious or contrived. This factor weighs against abstention.

After a careful review of these ten factors, the majority of which weigh in favor of

abstention, we conclude that abstention is indeed proper under *Colorado River*. However, we agree with plaintiff that a stay, rather than a dismissal, is the appropriate remedy. *See Adkins*, 644 F.3d at 503 n9 ("When abstention is appropriate under *Colorado River*, our circuit has a strong preference for a stay rather than a dismissal of the federal suit."). As such, we decline defendant's request for a dismissal, but stay this matter in its entirety pending the resolution of the *Centrue* case. Having reached this conclusion, we need not address defendant's argument regarding the failure to join indispensable parties.

## III. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted in part and denied in part. This matter is stayed pending the resolution of the *Centrue* case by the Kendall County court. Status hearing set for 4/17/13 at 9:00 a.m. If the *Centrue* case is resolved prior to that date, the parties shall promptly notify this court. It is so ordered.

**ENTERED:**

_____
**MICHAEL T. MASON**
**United States Magistrate Judge**

**DATED: October 19, 2012**