IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LYLE VOGA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 11-cv-7160 ) ) Magistrate Judge Jeffrey I. Cummings |
| LINDA BRYANT FRISBEE, individually and as Trustee of the LeRoy Voga Trust, | ) ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

On October 11, 2011, plaintiff Lyle Voga, an Illinois resident, filed a single-count complaint against his sister Linda Bryant Frisbee, an Arkansas resident, alleging breach of fiduciary duty. Linda moved to dismiss the complaint or, in the alternative, stay the case due to ongoing state court proceedings in the Circuit Court of Kendall County. The parties consented to the jurisdiction of a magistrate judge for all future proceedings pursuant to 28 U.S.C. §636(c), (Dckt. #19), and, on October 19, 2012, the Honorable Michael T. Mason imposed a stay of federal proceedings pending final disposition of the state court action. (Dckt. #32). The case was assigned to this Court on February 5, 2019. (Dckt. #101). Lyle now moves to lift the stay, (Dckt. #133), a motion which Linda opposes, (Dckt. #135). For the reasons herein, the Court denies Lyle's motion. This matter remains stayed pursuant to the Court's previous order.

I.      BACKGROUND

   A.   **Underlying Facts**

On January 22, 2003, LeRoy Voga, a farmer, executed a trust (the "Trust") that named his children (Lyle, Linda, Lois Englert, and Larry Voga) as beneficiaries. (Dckt. #1 at 2).

1

Pursuant to the Trust, Linda was designated as the primary successor trustee and given power of attorney over LeRoy's affairs. (*Id.*). The Trust gifted one half of LeRoy's farm property to Lyle, and one quarter each to both Linda and Larry. (*Id.*). Although Lois did not receive any real property under the Trust, the estate's residue was to be divided equally among LeRoy's four children.

In 2006, LeRoy fell into a coma. (*Id.*). After he became incapacitated and before his September 26, 2006 death, Linda amended the Trust so that Lois would receive a share of assets that was equivalent in value to the farmland designated for Linda and Larry. (*Id.* at 3). Following LeRoy's death, Linda presented her siblings with a proposed agreement setting forth how the Trust would be administered and which assets would make up Lois' share. (*Id.*). Among other things, the agreement provided that Lois would receive "all cash liquid assets on hand at the time of LeRoy Voga's death," as well as the revenue from the sale of various crops. (*Id.*). It also included a no-contest clause, providing that any co-trustees who brought a legal action contesting the Trust risked being disinherited. (*Id.*).

In early 2010, Lyle learned that his father had intended for him to receive whatever grain was on the farm at the time of his death, in addition to other personal property. (*Id.* at 3). Lyle alleges that because he did not receive these assets, he was unable to pay the estate tax and that a substantial federal estate tax lien has now been placed on his land. (*Id.* at 4).

### B. Interpleader Action in Kendall County

In 2008, Centrue Bank filed an interpleader action against the Voga children in the Circuit Court of Kendall County asking the court to determine who, if anyone, was entitled to the $81,670 in cash found in LeRoy's safety deposit box after his death. On August 26, 2010, Lyle

filed a thirteen-count "counter-complaint" against his siblings in Kendall County court. (Dckt. #32-3).

### C. Federal proceedings

Lyle filed the instant federal action on October 11, 2011. He alleges that Linda breached her fiduciary duties as trustee by self-dealing, acting with bias in favor of Lois, and attempting to divest Lyle of assets he was intended to receive. He further asserts that, as a result of Linda's actions, he has "lost substantial property interests, is being dunned for an estate tax payment which is inequitable and not proportionate to his interest, has a federal tax lien on his farm property which is larger than what his equitable proportion of the Trust estate tax should be" and has incurred substantial attorney's fees. (Dckt. #1 at 5). On October 19, 2012, Judge Mason found that the matter should be stayed pursuant to the abstention doctrine established in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

### B. Subsequent proceedings

Although Centrue Bank's claims were addressed quickly in Illinois state court, the counterclaims raised by Lyle have proven more difficult to resolve.[1] Lyle filed an amended five-count complaint in February 2013 in which he: (1) sought an accounting of the Trust's assets (Count I); (2) sought an apportionment of liability for estate taxes (Count II); (3) alleged a breach of fiduciary duty by Larry and Lois – but not Linda (Count III); (4) sought a declaratory judgment that any act of the agent that was taken after LeRoy became incapacitated was null and void because the power of attorney executed by LeRoy was not a durable power of attorney under Illinois law (Count IV); and (5) sought a declaratory judgment that any actions taken by Linda under the authority of the power of attorney regarding the LeRoy Trust were null and void

---

[1] For a more detailed summary of the state court proceedings, see the Illinois Appellate Court's holding in *Centrue Bank v. Voga*, 159 N.E.3d 544 (Ill.App. 2020).

because the power of attorney failed to specifically identify the LeRoy Trust (Count V). (Dckt. #133-2).

The trial court disposed of Counts IV and V of the amended counterclaim and, on March 2, 2016, proceeded to a bench trial regarding Lyle's remaining three claims. The court issued a written decision in June 2016, which Lyle appealed. The Illinois Appellate Court reversed and remanded the matter for a new trial. *See Centrue Bank v. Voga*, 81 N.E.3d 104 (Ill.App. 2017). On remand, Lyle filed a partial motion for summary judgment on the issue of whether the power of attorney Linda used to amend the Trust violated the Illinois Power of Attorney Act as alleged in Count V. The court denied Lyle's motion, found for Linda on her cross-motion for summary judgment on the same issue, and resolved the other pending claims without trial.

Lyle appealed a second time and the Illinois Appellate Court again reversed on September 24, 2020. The appellate court found that the trial court had improperly dismissed Count V and it held, as a matter of law, that Linda had no authority to amend the Trust under the power of attorney because it failed to satisfy Section 2-9 of the Illinois Power of Attorney Act. *See Centrue Bank*, 159 N.E.3d at 552-555. The appellate court further found that, because the trial court's findings regarding Lyle's other counts flowed from the wrongful dismissal of Count V, those issues must be reassessed on remand. *Id.* Following his successful appeal, Lyle filed a motion to reopen proofs to supplement the record before the trial court. (Dckt. #133-6). The trial court denied Lyle's motion, (Dckt. #133-8), and instead issued a third order on September 30, 2021, which relied on the record established in previous proceedings and made eighty-six findings concerning the merits of the parties' dispute. (Dckt. #133-7).

Following the state court's September 30 decision, the parties filed a joint status report in this Court on March 2, 2022, stipulating that "all matters currently pending in Kendall County

Case No. 08-CH-871" had concluded. (Dckt. #131). They asked that the Court grant them leave to file motions regarding the effect of the state court's decisions on the instant proceedings and address or renew any pending motions. (*Id.*). The Court granted these requests on March 3, 2022, and moved the case back to the active docket. (Dckt. #132). Fifteen days later, however, Lyle filed a third notice of appeal in state court. (Dckt. #133-9). Notwithstanding his action to restart the state court proceedings, he now asks that the stay in this action be lifted.

## II.     LEGAL STANDARD

The *Colorado River* doctrine permits "federal courts in some exceptional cases to defer to a concurrent state-court case as a matter of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 645 (7th Cir. 2011). Pursuant to the doctrine, courts evaluating a motion to stay proceedings must first consider whether the federal and state cases are "parallel," *i.e.*, whether "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Huon*, 657 F.3d at 646, *quoting Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004). If the cases are parallel, courts will assess whether "exceptional circumstances" justify abstention by weighing the following non-exclusive factors:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

*Huron*, 657 F.3d at 647-48. Because the exception created in *Colorado River* is a narrow one and there is a presumption against abstention, neutral factors weigh in favor of exercising jurisdiction. *Id.* at 646-48.

5

### III. ANALYSIS

A court may, in its discretion, lift an order to stay when circumstances have "substantially changed," such that the *Colorado River* doctrine no longer favors abstention. *See Tyrer v. City of South Beloit*, 516 F.3d 659, 664 (7th Cir. 2008).

In his 2012 order staying the instant case, Judge Mason found that the federal and state cases were parallel because they arose out of substantially the same set of facts and the legal issues were similar. (Dckt. #32 at 8-10). He further found that "exceptional circumstances" favored a stay, noting that the desirability of avoiding piecemeal litigation weighed heavily in favor of abstention. (Dckt. #32 at 10). Finally, he concluded that multiple other factors (namely, the source of law, the order in which jurisdiction was obtained, the adequacy of state-court action to protect Lyle's rights, the relative progress of the proceedings, the presence of concurrent jurisdiction, and the unavailability of removal factors) also weighed in favor of abstention under *Colorado River*.

Lyle now asserts that circumstances have changed such that two of these factors – specifically, the "desirability of avoiding piecemeal litigation" and the "adequacy of state-court action to protect the federal plaintiff's rights" – no longer support a stay. The Court disagrees on both counts.

#### A. The desire to avoid piecemeal litigation continues to weigh in favor of abstention.

First, Lyle suggests that "the likelihood of inconsistent findings as they relate to this federal matter are minimal" because "the Kendall County matter concluded with the circuit court judge determining that there is no necessity for trial." (Dckt. #133 at 6). But the Kendall County matter has *not* "concluded." Indeed, the trial court's finding that there is no necessity for trial is the primary issue raised by Lyle in his currently pending appeal. (Dckt. #133-9 at 5).

6

Accordingly, the trial court's earlier decision not to retry the case – a decision which will now be reviewed by the same appellate court that has already twice reversed the trial court's disposition of the case – does little to assuage this Court's concern regarding the potential for conflicting state and federal findings.

Should the state appellate court agree with Lyle for a third time, the trial court will again confront issues intrinsically intertwined with those raised here. First, the state court's accounting of the Trust's assets (sought under Count I of Lyle's amended counterclaim) would certainly relate to the question raised in this matter of whether and to what extent Linda attempted to divest Lyle of assets that his father had intended for him to receive. The state court would also revisit the question of estate tax liabilities (Count II), which relate to the "principal dispute" in this matter regarding federal estate taxes and the federal tax lien on Lyle's farmland. (Dckt. #32 at 9). Finally, while the appellate court issued a final judgment regarding Count V of Lyle's counterclaim, no substantive ruling has been made as to Count IV, which Judge Mason previously found "could have a preclusive effect on Lyle's claims here." (Dckt. #32 at 9-10).

The Court further notes that Linda certainly believes that there is a risk of conflicting findings, as she intended to file a motion to dismiss Lyle's federal claim based on *res judicata* until Lyle's latest appeal divested the trial court's September 30, 2021 judgment of its finality. (Dckt. #135 at 1-3). In addition, Lyle's assertion that this Court would better protect his rights than the state court necessarily implies that there is meaningful overlap between the two cases. (*See* Dckt. #133 at 7) ("Th[e] apparent lack of procedural due process in the state court begs [for] matters to be addressed fully and completely in federal court.")).

Accordingly, the Court finds that the desire to avoid piecemeal litigation continues to weigh in favor of abstention. *See First Bank and Trust Co. of Illinois v. Richardson*, No. 08 C

7

4987, 2010 WL 4136217, at *3 (N.D.Ill. Oct. 18, 2010) ("Although the state and federal actions are not as similar as they were when the stay was imposed, the Court believes that issues in both the state and federal proceedings weigh against lifting the stay at this point.").

> **B. Lyle has not shown that the Illinois state court proceedings are inadequate or unfair.**

Lyle's second point relates to the adequacy of the state court proceedings. He asserts that the limited progress made in Kendall County since 2012 "raises valid concerns about the quality, extensiveness, and fairness of the procedures currently being followed at the state court level." (Dckt. #133 at 7). The Court again finds otherwise. The simple fact that Lyle disagrees with the trial court's findings does not prove that they have been unfair. *See Tyrer v. City of South Beloit*, 516 F.3d 659, 665 (7th Cir. 2008) ("A plaintiff attempting to prove state court hostility must point to evidence of actual bias or hostility against the party himself – not merely legitimate rulings against a party on a contested claim."). Lyle's argument on this point also ignores the fact that the Illinois Appellate Court has twice ruled in his favor. Lyle's repeated success on appeal eviscerates his claim that he is being treated unfairly and denied procedural due process in the Illinois state court system. (Dckt. #133 at 7; Dckt. #136 at 3). Thus, this factor also continues to weigh in favor of abstention.

## CONCLUSION

In sum: because Lyle has failed to present "substantial changes" that would alter the Court's 2012 analysis in staying the case, his motion to lift the stay, (Dckt. #133), is denied. This matter remains stayed pending the resolution of the state court case that is currently pending on appeal before the Illinois Appellate Court. The parties shall file a joint status report regarding the status of the Illinois state court proceedings on March 31, 2023. If the state court

8

proceedings are resolved prior to that date, the parties shall file a joint status report within seven business days of the issuance of the operative state court decision.

**ENTERED:   December 30, 2022**

**Jeffrey I. Cummings
United States Magistrate Judge**